SARAH E. BAUCUS, APPELLANT, *v.* MARY A. STOVER, EXECUTRIX, AND EBENEZER A. BALCH AND JAMES BARR, AS EXECUTORS OF GEORGE STOVER, DECEASED, AND OTHERS, RESPONDENTS.

*Liability of an executor for a debt due to the testator — when he may show his (the executor's) insolvency — 3 R. S. (6th. ed.), 91, § 14 — how payment may be enforced — When the widow is not entitled to have sheep, swine, etc., set apart to her — Computation of commissions upon real estate sold subject to a mortgage.*

Although under section 14 of 3 Revised Statutes (6th ed.), 91, an executor must include a debt due from him to his testator in the inventory, and is, upon the final accounting, *prima facie* to be held liable therefor as for so much money in his hands at the time the debt became due, yet the presumption of solvency created by the statute may be rebutted, and the executor may show an honest inability to pay the debt continuing during the whole period of his executorship.

A decree refusing to charge the executor with the amount of his debt as for so much money in his hands, does not prevent his being required to render a further account should he thereafter become able to pay the debt, nor does it prevent a proceeding being instituted in equity against him to enforce the payment of the claim and the due application of the avails thereof when collected.

As the executor holds the position of a trustee as regards the debt, he could not avail himself of the statute of limitations as a defense.

The statute, authorizing the setting apart of sheep and swine to the widow, only applies where the deceased has such an ownership and possession of them at the time of the making of the inventory, as will permit of their delivery to the widow; when he has but a half interest therein, they cannot be delivered to her, nor can any allowance be made therefor.

Where, under a power in the will authorizing a sale for the purpose of a division of the proceeds, an executor sells real estate subject to mortgages existing thereon at the time of the testator's death, or sells the real estate free from the incumbrance, paying off such incumbrance from the proceeds of sale, he is only entitled to commissions 'upon the amounts actually received for the equity of redemption, and cannot charge them also upon the amount of the mortgages on the property sold. (BOCKES, J , dissenting.)

APPEAL from the decree of the surrogate of the county of Washington, on the final settlement of the accounts of the executrix and executors of the will of George Stover, deceased.

Among the assets of the deceased was a note of James Barr, one of the executors, dated April 1, 1874, for $4,561.91, on which there was due at the making of the inventory, as certified by the appraisers, $3,753.11. Barr united in verifying the inventory and in filing it. The testator owned no sheep or their fleeces, nor swine, but owned such jointly with his tenant farmer, one-half each. The appraisers did not set-off to the widow, sheep or their fleeces, or swine, or feed for the sheep and swine.

The real estate of the testator was mortgaged, the farm for $6,050 and the store for $2,675, and by virtue of a power in the will the executors sold both, realizing on the farm $7,189.63, and after paying the bond and mortgage a surplus of $1,139.63, and selling the store to the mortgagee for just the amount of the incumbrance.

The decree adjudged that Barr, executor, should not be required to account for his note ; that the widow should be allowed for sheep and their fleeces, and swine and food for the sheep and swine not set-off by the appraisers, and that the executrix and executor Balch should be allowed commissions on the gross amount of the sales of the real estate, not on the surplus only.

*Robert H. McClellan*, for the appellant.

*D. M. Westfall*, for the respondents.

BOCKES, J.:

This is an appeal from a decree of the surrogate of Washington county, made on a final accounting by the executrix and executors of the will of George Stover, deceased.

The leading question on this appeal arises on the omission of the surrogate to charge the executor Barr with the sum of $3,753.11 and interest, being the balance due the estate on his note, held by the testator at the time of his decease.

The facts in regard to this note are as follows : There was, among the assets of the deceased, a note made by Barr, one of the executors, dated April 1, 1874, for $4,561.91, on which there was due and unpaid at the time of making the inventory, as certified by the appraisers, $3,753.11. Barr united in verifying the inventory, which was filed with the surrogate. The note was inventoried as "very doubtful of collection of any part." Barr was wholly insolvent at the time of the decease of the testator, and so remained to the time of entering the decree appealed from.

The appellant insists that the surrogate was in error in omitting to charge Barr *as executor* with the amount unpaid on the note, and in refusing to decree distribution thereof against him as money in his hands for that purpose. This claim of the appellant is based upon the provision of the statute, which provides that "the naming of any person executor in a will shall not operate as a discharge or bequest of any just claim which the testator had against such executor, but such claim shall be included among the credits and effects of the deceased in the inventory, and such executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due, and he shall apply and distribute the same in the payment of debts and legacies and among the next of kin as part of the personal estate of the deceased." (3 R. S. [6th ed.], 91, § 14.)

The decision of the question under examination depends upon the proper construction to be given this provision of law. The object of the enactment therefore becomes an important if not absolutely controlling subject of inquiry. A reading of this section, in connection with others, defining the duties and obligations of executors, shows that the purpose of this statute was to effect a change in the law theretofore existing, according to which the appointment by the creditor of a debtor as his executor, discharged or extinguished the debt. (*Soverhill* v. *Suydam*, 2 Thom. & C., 460–465.)

This provision should consequently be construed with reference

to the object sought to be attained by its enactment. It was intended evidently to do no more than work this change in the law. Thus an executor would be held to the same obligation and duty as regarded his own indebtedness to the estate, to which he was bound, in regard to other assets coming to his hands. Nor is there any reason for an application of any stricter or more onerous obligation against him in the one case than in the other. As to other assets, if collectible, collection should be made, and he would be held to due diligence in that regard. In the case of his own indebtedness to the estate it should be presumed paid, and the money in hand under his obligation to pay. This is the substance and effect of the law under examination. But, as in the case of general assets, it would be open to him to show its utter worthlessness at all times during the continuance of the trust to which he was appointed. So to discharge himself from all obligation as executor for the worthless assets, he might show his total inability to make payment at, and subsequent to, the testator's decease. The principle applied in *Everts* v. *Everts* (62 Barb., 577–583) would apply here. The statute contemplates a condition of solvency, ability to pay the debt, not one of honest insolvency. Where it declares that the executor shall be liable for his indebtedness to the estate, as for so much money in his hands, an ability to pay while executor is within the contemplation of the law. It was not intended to have application to an exceptional case of his inability to meet his promise. A different construction of this law would make an insolvent executor, by virtue of the statute itself, an embezzler of money which he never received and which he was unable to obtain ; and this without any wrong or laches on his part. Such a construction would be unreasonable, as it would be unjust. It was in view of the wrong which such a construction would inflict, that a *ne exeat* was refused in *Brownell* v. *Akin* (6 Hun, 378). Undoubtedly the note should be inventoried among the assets. So the law declares ; and the executor should be held to be *prima facie* liable for his debt as for so much money in hand to be applied and distributed by him according to law (62 Barb., 577–579), but he would still be at liberty to meet and overcome the presumption against him by showing an honest inability to make payment at all times during his executorship, in which case he would not be held

liable on the accounting for money in hand. It cannot be that this law was intended to convert a liability on a simple contract debt into one of a different character involving the debtor's personal liberty. The decision in *Adair* v. *Brimmer* (74 N. Y., 539) and other cases cited by the appellant's counsel on this point, are not here applicable. In those cases there was no question as to the solvency of the executors. The cases were decided on the hypothesis that they were well able to pay and satisfy their indebtedness. In such case, as matter of course, the executor should be deemed to have the money in hand for distribution. It was not intended by this law to hold an executor to any greater or different obligation in the proceeding for his accounting before the surrogate than in case he was proceeded against in equity. On referring to the statute applicable to the latter proceeding, it will be seen that "in every such action the defendant shall not be charged for any demands or rights in action, specified in their inventory, unless it appear that such demands or rights have been collected, or might have been collected, with due diligence." (3 R. S. [6th ed.], 733, § 15.)

This should be the test of liability against the executor on his accounting before the surrogate; and, as I think, no other or severer test is given by the statute under its proper interpretation. The entire scheme of the law applicable to executors is to hold them to a just and honest exercise of duty in regard to the trust reposed in them, the test of which is due diligence in all things pertaining thereto, and it does not, as it should not, impose inequities and hardships where honest exertion has been fully observed.

It is laid down as a just rule that a trustee will be held liable for more than he receives, only in case of "superior negligence or willful default." (*Taylor* v. *Benham*, 5 How. [U. S.], 275, and cases there cited.) And that all that can be demanded of an executor or trustee is perfect honesty and reasonable diligence. (1 Iredell's Eq. [N. C.], 108.) The statute above cited has not, as we think, imposed any more stringent rule of duty and liability against an executor when debtor to the estate he represents.

It is urged by the appellant's counsel that the claim against the executor is barred by the decree appealed from. But there is nothing in the language of the decree to support this position. Besides it is provided by statute that a decree upon final settlement

is conclusive only to the effect "that the moneys stated in such account as collected, were all that were collectible on the debts stated in such account, at the time of the settlement thereof. (3 R. S. [6th ed.], 102, § 79; *Johnson* v. *Richards*, 3 Hun, 454; *Brown* v. *Brown*, 53 Barb., 217, 220, 221.)

A further accounting could be required against the executor in case he should become able to pay the debt, and holding the position of trustee as regards the debt, he could not avail himself of the bar given by the statute of limitations. Nor does the decree prevent a proceeding against the executor in equity, to enforce a payment of the claim and the due application of the avails when collected. Our conclusion is, that no error was committed in omitting to charge Barr with the amount of his note as so much money on hand for distribution.

It is further insisted that an improper allowance was made for commissions. Commissions were allowed on the gross sum for which the real estate sold, instead of the surplus beyond the mortgage liens. The will contained a power of sale of the real estate, and in point of fact the entire property was sold, and the moneys arising from the sale were applied first in payment and satisfaction of liens. Whether these liens were or were not also personal liabilities of the testator, the case does not disclose. It should be presumed that they were, if that fact would aid the respondents, as there can be no intendment against the correctness of the decree appealed from. It is the duty of the party charging error to make it appear. If these liens were personal liabilities of the testator, on which the estate might be charged for any deficiency arising on the mortgage sales, there would be propriety in securing their satisfaction by the executors. But this question under examination is determined against the appellant in *Cox* v. *Schermerhorn* (18 Hun, 16). This decision we feel bound to follow, at least on the facts in the present case.

It is further urged that the surrogate was in error in allowing to the widow the value of ten sheep with their fleeces, thirty-two dollars and fifty cents, and two swine, eighteen dollars; not set-off to her by the appraisers on making the inventory. We are of the opinion that these allowances to the widow were improperly made. The testator had no sheep or swine at the time of his death from

which such set-off then could be made. The statute contemplates such an ownership and possession of this property in the deceased, or his personal representatives, at the time of making up the inventory, as will permit their delivery to the widow at least potentially. Here the testator had but a half interest in these animals. They could not be then delivered over to the widow, even potentially, and, therefore, could not be set-off to her.

\* The decree appealed from must be corrected as to these items, and as then corrected it should be affirmed. No costs of appeal allowed to either party as against the other.

LEARNED, P. J. :

I do not agree as to the commissions. The will gave the real estate to the children equally, and gave the executors power to sell in order to divide. They sold the store to the mortgagee for exactly the amount of the mortgage thereon and received nothing. They sold the farm for more than the mortgage and received the difference only.

If the mortgages were not made by the testator, then they were not debts to be paid by the executors. If they were, then they were to be paid by the devisees and not by the executors. (1 R. S., 749, § 4.) In neither case were the executors to pay the mortgage debts primarily.

They had no power to sell the land free from the mortgages, but could only sell the equity of redemption. And they were entitled to commissions only on what they received. *In re De Peyster* (4 Sandf. Ch., 511) decides nothing on this point. *Cox* v. *Schemerhorn* (25 Sup. Ct., 16) cites no authority, except *In re De Peyster*. The facts in *Cox* v. *Schemerhorn* do not appear. The court say that the executors were liable for the price at which the property was sold. That would not be true in the present case. The executors did not receive and could not have received anything more than the value of the equity. Their commissions are only on what they receive and pay out. (2 R. S., m. p. 93, § 58.)

BOARDMAN, J., concurred.

---

\* This opinion was concurred in by LEARNED, P. J., and by BOARDMAN, J., except as to the allowances of commissions on the gross sum for which the real estate sold, instead of on the surplus over the mortgage liens.

On this question see opinion of LEARNED, P. J.

Decree modified by allowing commissions only on the surplus of the real estate beyond the mortgages, instead of the whole value, by disallowing the value of the sheep; otherwise affirmed without costs to either party.